UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GORGI TALEVSKI, by Next Friend Ivanka Talevski, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, | ) ) ) |
| | ) |
| AMERICAN SENIOR COMMUNITIES, LLC, and | ) ) ) |
| VALPARAISO CARE AND REHABILITATION, | ) ) ) ) |
| Defendants. | ) |

CASE NO. 2:19-cv-0013-

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Gorgi Talevski, by Next Friend Ivanka Talevski, and by counsel, files his Complaint and Demand for Jury Trial against Defendants The Health and Hospital Corporation of Marion County ("HHC"), American Senior Communities, LLC ("ASC"), and Valparaiso Care and Rehabilitation ("VCR") depriving and/or conspiring to deprive Plaintiff of rights secured under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396, *et seq.*, the Federal Nursing Home Regulations found in 42 C.F.R. Sec. 483, and the Constitution of the United States of America, under color of state law, pursuant to 42 U.S.C. § 1983.

**I. Parties, Jurisdiction and Venue**

1. Plaintiff Gorgi Talevski ("Mr. Talevski") is an adult individual residing at Signature of Bremen located at 316 Woodies Lane in Bremen, Marshall County, Indiana, within the

geographical boundaries of the Northern District of Indiana. At all times relevant to this action, Mr. Talevski has resided within the geographic boundaries of the Northern District.

2. Ivanka Talevski ("Mrs. Talevski") is the Plaintiff's wife and attorney in fact, and at all times relevant to this action, has resided at 429 Hampshire Court, Valparaiso, Porter County, Indiana, within the geographical boundaries of the Northern District of Indiana.

3. Valparaiso Care and Rehabilitation ("VCR") is a long-term care, skilled nursing facility, located in Valparaiso, Porter County, Indiana, within the geographical boundaries of the Northern District of Indiana.

4. The Health and Hospital Corporation of Marion County ("HHC') is a municipal corporation, owned by Marion County, Indiana, and headquartered in Indianapolis, Indiana. At all times relevant to this action, HHC has owned VCR, as well as approximately 77 other nursing homes throughout Indiana.

5. American Senior Communities ("ASC") is a privately held nursing home management company headquartered in Indianapolis, Indiana. At all times relevant to this case, ASC has been under contract with HHC to manage and operate VCR, as well as all of HHC's other nursing homes throughout the state.

6. This case presents an issue of federal law, and therefore, subject matter jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1331, .

7. All acts and events relating to this action having occurred within the geographical boundaries on the Northern District of Indiana, venue is proper in this Court.

## II. Factual Allegations

8. Mr. Talevski suffers from dementia. His family cared for him until it became clear that he needed full-time care to ensure his safety.

9. In January 2016, when Mr. Talevski's family could no longer care for him, he became a patient at VCR, a nursing facility located in his hometown Valparaiso, Indiana. At the time that he entered VCR, Mr. Talevski was able to able to walk, talk, feed himself, socialize, and recognize his family.

10. While Mr. Talevski was a resident at VCR, his wife and two daughters were frequently called to the facility to help staff with Mr. Talevski. Mrs. Talevski and her daughters observed that VCR's dementia unit was often understaffed. Additionally, the staff that was present appeared to be poorly trained in dealing with dementia patients. On a number of occasions, Mr. Talevski's family found that he had soiled himself, and had a severe rash on his buttocks.

11. As Mr. Talevski's time at VCR passed, he began losing his ability to communicate in English. Instead, he could communicate only in his native Macedonian. VCR never provided or used any language translation services or other means to communicate with Mr. Talevski. Consequently VCR staff had great difficulty caring for Mr. Talevski.

12. In late August 2016, Mr. Talevski suddenly and dramatically decompensated. He stopped eating on his own, requiring his wife and daugthers to go to VCR to feed him. One one occasion, Mr. Talevski could not even get up out of bed at all.

13. When Mr. Talevski's confronted VCR staff about why Mr. Talevski's condition was deteriorating so drastically, they were told that it was the progression of his disease.

14. On or about September 2016, Mr. Talevski's daughter asked VCR staff for a list of all the medications that Mr. Talevski was being given. The list revealed that Mr. Talevski was on ten different medications, six of which were psychotropic medications.

15. Mr. Talevski's daughter strongly suspected that her father was being chemically restrained, a suspicion she confirmed with outside medical providers, and Mr. Talevski's family

sought outside medical care from a specialist to remove these medications from her father's regime.

16.  During the week of September 27, 2016, the Indiana State Department of Health ("ISDH") conducted its annual survey of VCR.  During that time, survey nurses were available for residents or family members to speak with.  Mr. Talevski's family filed a formal compliant with ISDH regarding the over-prescribing of psychiatric drugs to chemically restrain Mr. Talevski.

17.  As Mr. Talevski's medication was tapered down, per the orders of his own neurologist, Mr. Talevski began to recover, and started to feed himself once agian.

18.  In late November, VCR started to send Mr. Talevski out to Doctors NeuroPsychiatric Hospital ("NeuroPsych") in Bremen,  Indiana, which is an hour and half away from Valparaiso.  VCR's reason for this action was alleged inappropriate behavior towards female residents and staff.

19.  Initially, Mr. Talevski was sent to NeuroPsych from November 23 through December 15, 2016.  Only four days after his return from NeuroPsych, Mr. Talevski was sent to the facility for a second time, from December 19 through December 29.  The ***day after his return*** Talevski was sent to NeuroPsych for a third time.

20.  NeuroPsych intended to return Mr. Talevski to VCR on January 9, 2017.  However, VCR refused to accept Mr. Talevski back.  Instead, VCR tried to force his transfer to an all-male dementia facility in Indianapolis.

21.  The last time Mr. Talevski was sent to NeuroPsych, he was sent without his dentures.  VCR never provided NeuroPsych with Mr. Talevski's dentures, leaving him, essentially, toothless in Bremen.

22.  When VCR refused to allow Mr. Talevski to return, his family filed a Petition for Review of Involuntary Transfer through the ISDH.

23.  Although the staff at NeuroPsych attempted to find another facility for Mr. Talevski,

they were unable to find another appropriate facility in Northwest Indiana. NeuroPsych was able to find a suitable facility in Bremen, although that facility was a ninety-minute drive from Mr. Talevski's family in Valparaiso.

24. The family agreed to Mr. Talevski's temporary transfer there pending the outcome of the ISDH hearing.

25. Because Mr. Talevski had not had his dentures at NeuroPsych, when he was transferred to Bremen, the staff there was unable to fit new dentures because his gums had receded to far. As of the date of filing, Mr. Talevski is still without his dentures.

26. On January 19, 2017, an ISDH Administrative Law Judge ("ALJ") held a nearly six-hour-long hearing following which the ALJ effectively denied VCR's attempt to "patient dump" Mr. Talevski, ruling "the decision to transfer [Mr. Talevski] from Valparaiso Care and Rehabilitation should **NOT** be affirmed." The order was issued February 28, 2017.

27. Based on the ALJ's order, the family attempted to have Mr. Talevski returned to VCR. However, VCR simply ignored the order and refused to readmit Mr. Talevski.

28. As a result, Mr. Talevski unnecessarily spent more than a month and a half at NeuroPsych, at a cost of nearly $30,000, all of which was paid for by Medicare.

29. Mr. Talevski's family complained to the ISDH regarding VCR's refusal to abide by the ALJ's order. The ISDH sent in another nurse investigator to address all the complaints against the nursing home.

30. In May 2017, the ISDH issued their finding in an 81 page document.

31. After "dumping" Mr. Talevski at NeuroPsych in January, following the May ISDH report, ASC contacted Mrs. Talevski to discuss evaluating Mr. Talevski for return to VCR.

32. After meeting with VCR staff in June 2017, and after reading the 81 page report, Mr.

Talevski's family was very concerned about possible retribution against Mr. Talevski if he was to be returned. Additionally, Mr. Talevski was by now acclimated to his new surrounding at the Bremen nursing home.

33.     As a result, Mr. Talevski's family opted to leave Mr. Talevski in the Breman facility.

34.     As a result, Mr. Talevsji's family is required to make a three-hour round-trip to visit Mr. Talevski, which they do on a regular basis.

### III.  Legal Allegations

**Count One: Deprivation of Rights Under Color of State Law (42 U.S.C. § 1983)**

35.     Plaintiff restates each and every allegation in paragraphs one (1) through thirty-four (34) as though fully set forth herein.

36.     Defendant HHC is a corporation owned by Marion County, Indiana, and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

37.     Defendant VCR is wholly-owned by HHC and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

38.     Defendant ASC manages VCR as an agent of HHC, and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

39.     The 1987 Omnibus Budget Reconciliation Act ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), which was contained within the 1987 OBRA, and the implementing regulations therefore, found at 42 C.F.R. § 483, *et seq.*, clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

40.     The Defendants' actions, individually and/or collectively, and in derogation of the above statute and regulations, have deprived Mr. Talevski of those rights by:

    a. maintaining a policy, practice or custom of allowing the use illegal chemical restraints on Mr. Talevski and other VCF patients;

    b. maintaining a policy, practice or custom that denied Mr. Talevski, via his legal representatives, to file grievance free of reprisal as required by law;

    c. maintaining a policy, practice or custom that deprived Mr. Talevski and other VCR residents, to remain at the nursing facility and not to be transferred or discharged without due process;

    d. denying Mr. Talevski due process by failing to provide proper and timely notification of any transfer or discharge from the nursing facility;

    e. by maintaining a policy, practice, or custom, that failed to care for Mr. Talveski in such a manner and in such an environment as to promote maintenance or enhancement of the quality of life of each resident;

    f. by maintaining a policy, practice, or custom that failed to provide Mr. Tavelsi with nursing and related services and specialized rehabilitative services to attain or maintain his highest practicable physical, mental, and psychosocial well-being; that is, by repeatedly and regularly failing to have sufficient staff to care for Mr. Tavelski;

    g. failing to provide Mr. Talevski with medically-related social services, including but not limited to translation services, to attain or maintain his highest practicable physical, mental, and psychosocial well-being; that is, by failing to provide an effective means to communicate with Mr. Tavelski in his native language;

    h. failing to provide Mr. Talevski with pharmaceutical services (including procedures that assure the accurate acquiring, receiving, dispensing, and administering of all drugs and biologicals) to meet his needs; that is, by

        over-prescribing the use of psychotropic drugs as chemical restraints;

    i.    failing to provide Mr. Talevski with an on-going program, directed by a qualified professional, of activities designed to meet his interests and the physical, mental, and psychosocial well-being;

    j.    by failing to provide Mr. Talevski with routine dental services (to the extent covered under the State plan) and emergency dental services to meet his needs; that is, by failing to provide him with his dentures when transferring him to NeuroPsych;

    k.    depriving Mr. Talevski of his right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat his medical symptoms; that is, by over-prescribing the use of psychotropic drugs to chemically restrain Mr. Talevski;

41.    The Defendants' actions were intentional, willful, and in reckless disregard for Mr. Talevski's rights.

42.    As a result of the Defendants' unlawful actions, Mr. Talevski suffered, and continues to suffer, damages, including but not limited to, legal expenses, physical and mental pain and suffering, emotional distress, humiliation, and embarrassment.

### IV. Relief Requested

WHEREFORE, Plaintiff Gorgi Talevski, by Next Friend Ivanka Talevski, respectfully requests that the Court enter judgment in her favor, and against the Defendants, and provide the following relief:

43.    Order the Defendants, jointly and severally, to pay him actual damages in an amount sufficient to compensate him for any actual out-of-pocket costs, including but not limited to any subrogation by any insurance company or government entity;

44. Order the Defendants, jointly and severally, to pay him compensatory damages for the physical and mental pain and suffering, emotional distress, humiliation, and embarrassment caused by Defendants' actions;

45. Order Defendant ASC to pay him punitive damages, for its willful, reckless and malicious actions;

46. Order the Defendants, jointly and severally, to pay pre- and post-judgment interest on all sums awarded

47. Order the Defendants, jointly and severally, to pay her reasonable attorney fees and costs of litigating this action; and

48. Order the Defendants, jointly and severally, to provide any and all other relief to which the Plaintiff may be entitled.

## V.  Demand for Jury Trial

Plaintiff Gorgi Talevski by Next Friend Ivanka Talevski, and by counsel, demands a trial by jury on all issues so triable.

Respectfully submitted,

  s/  Jay Meisenhelder
Jay Meisenhelder, Atty No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN  46214
Office Telephone: 317/231-5193
Direct Telephone: 317/899-9220
Facsimile Number: 317/982-5463
Email Address: jaym@ecrls.com


  s/  Susie Talevski
Susie Talevski, Atty. No. 23771-49
429 Hampshire Court
Valparaiso, IN 46385

-10-

                                                Telephone:        212-662-6135
                                                Email Address:   talevskilaw@gmail.com