UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| GORGI TALEVSKI, by Next Friend Ivanka Talevski,<br><br>Plaintiff,<br><br>vs.<br><br>THE HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, AMERICAN SENIOR COMMUNITIES, LLC and VALPARAISO CARE AND REHABILITATION,<br><br>Defendants. | ) | CASE NO. 2:19-cv-00013-JTM-APR |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Come now Defendants, Health and Hospital Corporation of Marion County d/b/a Valparaiso Care and Rehabilitation ("HHC") and American Senior Communities, LLC ("American Senior"), by counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), and hereby submit their Reply in Support of their Motion to Dismiss Plaintiff, Gorgi Talevski, by Next Friend Ivanka Talevski's, ("Talevski") Complaint.

## I.
## INTRODUCTION

In January 2016, Talevski began receiving treatment as a full-time patient at HHC's Valparaiso Care and Rehabilitation nursing home facility ("VCR"), which was managed by American Senior, a private nursing home management company. [Filing No. 1 at 2-3.] After Talevski's condition deteriorated, HCC sent Talevski to Doctors NeuroPsychiatric Hospital ("NeuroPsych") in Bremen, Indiana between November 23, 2016 and December 30, 2016, and

HHC refused to allow him to return as scheduled on January 9, 2017. [Filing No. 1 at 4.] Despite subsequent attempts by Talevski's family to return him to VCR, Talevski never returned to VCR after he was initially rejected on January 9, 2017. [Filing No. 5-6.] The NeuroPsych facility later transferred Talevski to another nursing facility in Bremen, Indiana, and after growing accustomed to that facility, Talevski's family ultimately "opted to leave Mr. Talevski in the Bremen facility" and not to return to VCR. [Filing No 1 at 6.][1]

On January 10, 2019, two years and one day after Talevski was initially and permanently denied readmission to VCR, Talevski filed his Complaint against HHC and American Senior, asserting a claim under 42 U.S.C. § 1983 for violations of the Federal Nursing Home Reform Act, 42 U.S.C. § 1396r, *et seq.* (The "FNHRA"). [Filing No. 1 at 6-8.] On March 26, 2019, HHC and American Senior filed their Motion to Dismiss Talevski's Complaint on three bases: (1) the FNHRA does not create a private right of action on which Talevski can state a claim under § 1983; (2) Talevski's Complaint is barred by the applicable statute of limitations; and (3) American Senior cannot be liable to Talevski under § 1983 as private entity. [Filing No. 14; Filing No. 15.] Talevski filed his Response in Opposition to HHC and American Senior's Motion to Dismiss on April 29, 2019 (the "Response in Opposition"). [Filing No. 19.] In his Response in Opposition, Talevski claims that the FNHRA addresses nursing facility residents' rights and was intended to create a private right of action for nursing facility residents. [Filing

[1] In his Response in Opposition to Defendants' Motion to Dismiss, Talevski asserts that Defendants "***significantly*** distorted the factual allegations in the Complaint" by explaining that Talevski's family decided to keep Talevski at the Bremen nursing home facility permanently in its Brief in Support of its Motion to Dismiss, and even goes so far as to say that HHC's characterization of this fact "might be considered dishonesty." [Filing No. 19 at 2-3.] However, while Talevski quoted paragraphs 26-32 of his own Complaint to explain his factual allegations regarding events taking place after Talevski left VCR, Talevski neglected to restate paragraph 33 of his Complaint, which provides that "Talevski's family opted to leave Mr. Talevski in the Bremen facility." [Filing No. 1 at 6; Filing No. 19 at 2-3.] Therefore, despite Talevski's allegations, HHC and American Senior did not "significantly distort" and was in no way "dishonest" as to Talevski's factual allegations.

No. 19 at 4-13.] Talevski also argues that his Complaint was timely because the applicable two-year statute of limitations should "restart" each time Talevski was denied readmission to VCR, even though Talevski was never readmitted to VCR after his initial rejection, and that American Senior should be treated as a state actor based on its contractual relationship with HHC. [Filing No. 19 at 13-16.]

Because the language of the FNHRA describes requirements states must impose on nursing facilities in order for them to receive federal funding, rather than establish rights for nursing home residents, the FNHRA does not create a private right of action under which Talevski can assert a § 1983 claim against either HHC or American Senior. Additionally, because Talevski was originally rejected from VCR on January 9, 2017 and never returned to the facility, Talevski's statute of limitations began accruing on January 9, 2017, despite any other instances in which Talevski alleges he was rejected by VCR. Furthermore, American Senior cannot be subject to a § 1983 claim because it did not act under color of state law with respect to Talevski. As such, Talevski's claims against HHC and American Senior must be dismissed.

## II.
## DISCUSSION

### A. The FNHRA does not establish a private cause of action.

While Talevski attempts to state a cause of action under § 1983 based on the language of the FNHRA, the FNHRA does not create a private right of action under which Talevski can assert his claim. "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States. Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis in original). In *Blessing v. Freestone*, the Supreme Court set forth three factors to help determine

whether a federal statute can create a private right: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." 520 U.S. 329, 340-41 (1997). "These factors are meant to set the bar high." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 973 (7th Cir. 2012). "[A]nything short of an unambiguously conferred right to support a cause of action under § 1983" will fail. *Gonzaga*, 536 U.S. at 283. "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id*. at 286.

Furthermore, legislation passed specifically pursuant to Congress' spending power, including the FNHRA, "provide no basis for private enforcement by § 1983" "unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights." *Id*. at 280 (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17, 28 and n. 21 (1981)); *see also*, *Planned Parenthood*, 699 F.3d at 973 ("In the context of legislation adopted under the spending power, this rigorous approach reflects concerns about federalism and reinforces the principle that Congress must clearly express its intent to impose conditions on the grant of federal funds so that the State can knowingly decide whether or not to accept those funds") (internal quotations omitted). Therefore, for a spending statute like the FNHRA to establish a private right of action under § 1983, the statute "must contain 'rights-creating language' that unambiguously creates an '*individual* entitlement.'" *Planned Parenthood*, 699 F.3d at 973 (emphasis in original) (quoting *Gonzaga*, 536 U.S. at 287). Language sufficiently

creates a right where it is "phrased in terms of the persons benefited," "with an unmistakable focus on the benefit class," and "explicitly confer[s] a right directly on a class of persons that included the plaintiff in the case." *Cannon v. Univ. of Chi*., 441 U.S. 677, 690 n. 13, 691 (1979); *see also*, *Gonzaga*, 536 U.S. at 284. The Seventh Circuit recognized "the Supreme Court's hostility" toward implying individual rights in spending statutes under the *Blessing-Gonzaga* framework in *Bruggeman ex rel Bruggeman v. Blagojevich*, in which the Court found that the "best interests" provision of the Medicaid Act was "insufficiently definite to be justiciable, and … cannot be interpreted to create a private right of action." 324 F.3d 906, 911 (7th Cir. 2003).

Although Talevski relies heavily on legislative committee notes to assert that the FNHRA was intended to create a private right of action for nursing home residents [Filing No. 19 at 6-8], Talevski fails to point to any statutory language within the FNHRA that explicitly creates such private rights—because no such language exists. While the language of the FNHRA references nursing facility residents and imposes requirements on nursing facilities to protect their rights, such references "always appear[] within the context of what the *state* must require of a nursing facility to participate in a federal spending program." *Terry v. Health and Hosp. Corp. of Marion Cnty*., No. 1:10-cv-00607-DML-JMS, slip op. at 18 (S.D. Ind. Mar. 29, 2012) (emphasis in original); *see also*, 42 U.S.C. § 1396r(c) ("A nursing facility must protect and promote the rights of each resident …"). "Congress did not 'phrase' the [F]NHRA … 'in terms that grant rights to' nursing facility residents," but instead "chose to impose obligations on the federal and state governments and nursing facilities requirement them to ensure that nursing facility residents receive certain benefits." *Schwerdtfeger v. Alden Long Grove Rehabilitation and Health Care Ctr., Inc*., No. 13 C 8316, 2014 WL 1884471, at *4 (N.D. Ill. May 12, 2014) (quoting *Ind. Prot. & Advocacy Servs*., 603 F.3d 365, 375 (7th Cir. 2010)). Therefore, the FNHRA is not "phrased

in terms of the person benefitted," and the "unmistakable focus" of the FNHRA is on the requirements that a state must impose on nursing facilities to obtain federal funding, not rights of the nursing facility residents. *See Cannon*, 441 U.S. at 690 n. 13, 691; *see also*, *Gonzaga*, 536 U.S. at 284; *Terry*, No. 1:10-cv-00607-DML-JMS, at 15-18.

While Talevski argues that *Planned Parenthood* should be "singularly instructive in this case," the Court in *Planned Parenthood* did not address the FNHRA, but rather analyzed the language within the Medicaid Act's "freedom of choice provision" under 42 U.S.C. § 1396a(a)(23) under the *Blessing-Gonzaga* framework. *See Planned Parenthood*, 699 F.3d at 974. Talevski even highlights the distinctions between the "freedom of choice" provision and the FNHRA by asking the Court to imagine how the FNHRA would change "[i]f one restates" the language of the FNHRA "using the language of the 'freedom of choice' provision. [Filing No. 19 at 13.][2] If the language if the FNHRA was in fact sufficient to create a private cause of action, such reconstruction of the FNHRA language would not be necessary.

Furthermore, Talevski asks the Court to ignore the analysis of other district courts in the Seventh Circuit applying the *Blessing-Gonzaga* framework to the FNHRA and instead adopt the Third Circuit's interpretation of FNHRA in *Grammer v. John J. Kane Regional Centers-Glen Hazel*, 570 F.3d 520 (3rd Cir. 2009). [Filing No. 19 at 11]. However, district courts in the Seventh Circuit have repeatedly and explicitly rejected the Third Circuit's decision in *Grammer* and have held that the FNHRA does not create a private right of action for nursing facility residents. *See Terry*, No. 1:10-cv-00607-DML-JMS, at 18-19 (holding that the FNHRA does not create individual rights under § 1983 and reasoning that the Third Circuit was bound by prior

[2] Even under Talevski's reconstruction of the FNHRA language, the FNHRA still would not create a private right of action for nursing facility residents because such proposed language would still place the burden on the nursing facility to "afford the right[s]" claimed by Talevski on their residents.

precedent that contradicts Seventh Circuit's precedent in *Bruggeman*); *see also*, *Schwerdtfeger*, 2014 WL 1884471, at *4; *Fiers v. La Crosse Cnty*., 132 F. Supp. 3d 1111, 1119. In fact, because the Seventh Circuit "has explicitly recognized that *Gonzaga* established a 'rigorous' analysis, requires an 'unmistakable focus' on the benefitted class, and set a much higher bar for federal rights creation that *Blessing* had previously articulated," the "dissent in *Grammer* is more akin to the Seventh Circuit's approach to *Gonzaga*." *Fiers*, 132 F. Supp. 3d at 1119 (citing *Planned Parenthood*, 699 F.3d at 973). Therefore, the Third Circuit's decision in "*Grammer* does not reflect the Seventh Circuit's understanding of *Blessing-Gonzaga*," *Fiers*, 132 F. Supp. 3d at 1119, and this court should decline to follow it in favor of following its sister district courts in the Seventh Circuit finding that the FNHRA does not support a private right of action.

Because the statutory language of the FNHRA focuses on requirements that states must impose on nursing facilities in order for them to receive federal funding, rather than on the rights of residents of the nursing facilities, the FNHRA does not create a private right of action. As such, Talevski's § 1983 claim based on the FNHRA does not state a proper claim for relief against HHC or American Senior, and his Complaint must therefore be dismissed.

**B. Talevski's claim against HHC and American Senior is time barred under the applicable statute of limitations.**

Even if Talevski could state a claim under the FNHRA, Talevski's § 1983 claim against HHC and American Senior is barred because it was not filed within the applicable statute of limitations. Claims raised under § 1983 are subject to the most appropriate statute and applies the forum state's personal injury statute of limitations. *Lovett v. Seniff*, 277 F. Supp. 2d 896, 897 (N.D. Ind. 2003); *Dobbie v. Bremen Police Dep't*, 341 F. Supp. 3d 896, 901 (N.D. Ind. 2018) (quoting *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998)). Under Indiana law, the two-year statute of limitations under Ind. Code § 34-11-2-4(a) applies to personal injury actions.

*See Campbell v. Chappelow*, 95 F.3d 576, 580 (7th Cir. 1996). Where all facts necessary for determining whether a party raised its claims within the applicable limitations period are plead in a complaint, a court may dismiss a case pursuant to the statute of limitations on a Rule 12(b)(6) motion to dismiss. *Lovett*, 277 F. Supp. 2d at 897 (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).

Although Talevski agrees that a two-year statute of limitations applies in this case, Talevski disagrees that the statute began accruing on January 9, 2017 when Talevski was initially refused readmission to VCR. [Filing No. 19 at 14.] Instead, Talevski argues that the statute began accruing on January 19, 2017 after denying Talevski readmission following an administrative law judge's decision rejecting HHC's decision to transfer him and would have "restarted" on March 1, 2017 when Talevski was alleged refused readmission again.[3] [Filing No. 19 at 14.]

Despite Talevski's assertions to the contrary, it is well settled under Indiana law that "[a] cause of action accrues, and thus the limitations period begins to run, when the claimants 'knew or, in the exercise of ordinary diligence, could have discovered, an injury had been sustained as a result of the tortious act of another.'" *Gittings v. Deal*, 109 N.E.3d 963, 972 (Ind. 2018) (quoting *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992)). Because Talevski's Complaint alleges that he was deprived of rights as a result of being rejected for readmission to VCR by HCC and American Senior, Talevski knew or show have known that an injury had been sustained on January 9, 2017 when Talevski was first denied readmission. [Filing No. 1 at 4.]

[3] Although Talevski provides that he was denied readmission to VCR on March 1, 2017, based on the decision rendered by the administrative law judge on February 28, 2017 in his Response in Opposition to Motion to Dismiss, Talevski does not specifically allege that he was denied readmission on March 1, 2017 in his Complaint. [Filing No. 1.] However, HCC and American Senior will treat Talevski's references to March 1, 2017 as if it were part of Talevski's pleadings for the purposes of this Reply brief.

This is especially true in this case where Talevski never returned to VCR after his initial rejection on January 9, 2017. [Filing No. 1 at 4-6.] Because Talevski did not file his Complaint until January 10, 2019, his Complaint was filed outside of the applicable two-year statute of limitation and is therefore time barred.

**C. American Senior is not a state actor and did not act under color of state law.**

Even beyond any issues relating to the validity of Talevski's claim under the FNHRA and the applicable statute of limitation, Talevski still cannot support a § 1983 claim against American Senior because American Senior never served as a state actor acting under color of state law. When determining whether an entity can be held liable under § 1983, the ultimate question is whether "the alleged infringement of federal rights can be fairly attributable to the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (internal quotations omitted). "At its most basic level, the state action doctrine requires that a court find such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009) (citations and quotations omitted). The Seventh Circuit has found that a private entity can only be held liable for acting under "color of state law" under § 1983 if the state "either (1) effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision, or (2) delegates a public function to the private entity." *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 897 (7th Cir. 2004) (internal quotations omitted). Neither the mere fact that private entity "'is subject to state regulation'" nor the "'mere approval of or acquiescence'" in the private entity's initiatives is not enough to convert the private entity's actions into that of the State. *Ruffin v. Methodist/IU Hosp.*, No. 1:15-cv-1034-TWP-DKL, 2017

WL 819703, at *1, *4 (S.D. Ind. Mar. 1, 2017) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974); *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)).

While Talevski alleged that American Senior was an agent of HHC by managing the VCR facility, the mere fact that American Senior contracted with HHC to provide nursing facility management services does not convert American Senior's conduct to that of the State. Talevski did not present any factual allegations that HHC directed or controlled American Senior's actions and certainly has not provided any allegations showing such actions could be considered the responsibility of the State. Because nursing home facility management is not an inherently public function, HHC did not delegate a public function to American Senior to justify treating it as a state actor. Therefore, American Senior cannot be considered to have acted under color of state law and cannot be liable to Talevski under a § 1983 claim.

## III.
## CONCLUSION

Despite his assertions to the contrary, Talevski fails to state a claim for relief against HHC or American Senior. Although Talevski attempted to state a claim under § 1983 through the FNHRA, the FNHRA does not create a private right for nursing home residents on which Talevski's claim can rest. Additionally, even if the FNHRA did establish a private right of action, Talevski's claim against HHC and American Senior would be time barred because his Complaint was filed more than two years after he was initially denied readmission from VCR. Furthermore, because American Senior is a private actor and did not act under color of state law, American Senior cannot be liable to Talevski for any § 1983 claims. Therefore, Talevski's claim against HHC and American Senior fail as a matter of law and must be dismissed with prejudice.

RILEY BENNETT EGLOFF LLP

Laura K. Binford
Laura K. Binford
Atty. No. 15280-49A
Jaclyn M. Flint
Atty. No. 32589-49
Attorney for Defendants,
The Health and Hospital Corporation of Marion County d/b/a Valparaiso Care and Rehabilitation and American Senior Communities, LLC

RILEY BENNETT EGLOFF LLP
Fourth Floor
141 East Washington Street
Indianapolis, IN 46204
(317) 636-8000
(317) 636-8027 (Fax)
lbinford@rbelaw.com
jflint@rbelaw.com