UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GORGI TALEVSKI, by Next Friend Ivanka Talevski, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CASE NO. 2:19-cv-00013-JTM-APR |
| THE HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, AMERICAN SENIOR COMMUNITIES, LLC and VALPARAISO CARE AND REHABILITATION, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Come now Defendants, The Health and Hospital Corporation of Marion County, American Senior Communities, LLC, and Valparaiso Care and Rehabilitation (collectively, "Defendants"), by counsel, and for their Answer and Affirmative Defenses to Plaintiff, Gorgi Talevski, by Next Friend Ivanka Talevski's, Complaint, states as follows:

### I. Parties, Jurisdiction and Venue

1. Plaintiff Gorgi Talevski ("Mr. Talevski") is an adult individual residing at Signature of Bremen located at 316 Woodies Lane in Bremen, Marshall County, Indiana, within the geographical boundaries of the Northern District of Indiana. At all times relevant to this action, Mr. Talevski has resided within the geographic boundaries of the Northern District.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of Plaintiff's Complaint.

{02166921- }

2. Ivanka Talevski ("Mrs. Talevski") is the Plaintiff's wife and attorney in fact, and at all times relevant to this action, has resided at 429 Hampshire Court, Valparaiso, Porter County, Indiana, within the geographical boundaries of the Northern District of Indiana.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 of Plaintiff's Complaint.

3. Valparaiso Care and Rehabilitation ("VCR") is a long-term care, skilled nursing facility, located in Valparaiso, Porter County, Indiana, within the geographical boundaries of the Northern District of Indiana.

**ANSWER:** Defendants admit "Valparaiso Care and Rehabilitation" is an assumed business name of The Health and Hospital Corporation of Marion County and is the name of a long-term care, skilled nursing facility located in Valparaiso, Porter County, Indiana, within the geographical boundaries of the Northern District of Indiana. Defendants deny any assertions or implications contained in paragraph 3 of Plaintiff's Complaint that may be inconsistent with this admission.

4. The Health and Hospital Corporation of Marion County ("HHC") is a municipal corporation, owned by Marion County, Indiana, and headquartered in Indianapolis, Indiana. At all times relevant to this action, HHC has owned VCR, as well as approximately 77 other nursing homes throughout Indiana.

**ANSWER:** Defendants admit HHC is a municipal corporation established by Indiana code 16-22-8 which is owned by Marion County, Indiana, and headquartered in Indianapolis, Indiana. During the period alleged in Plaintiff's Complaint HHC owned the license to operate VCR. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4 of Plaintiff's Complaint.

5. American Senior Communities ("ASC") is a privately held nursing home management company headquartered in Indianapolis, Indiana. At all times relevant to this case, ASC has been under contract with HHC to manage and operate VCR, as well as all of HHC's other nursing homes throughout the state.

**ANSWER:** Defendants admit the allegations of paragraph 5 of Plaintiff's Complaint.

6. This case presents an issue of federal law, and therefore, subject matter jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1331, .

**ANSWER:** The allegations contained in Paragraph 6 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent the Court requires Defendants to respond, Defendants deny the allegations contained in paragraph 6 of Plaintiff's Complaint.

7. All acts and events relating to this action having occurred within the geographical boundaries on the Northern District of Indiana, venue is proper in this Court.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of Plaintiff's Complaint.

## II. Factual Allegations

8. Mr. Talevski suffers from dementia. His family cared for him until it became clear that he needed full-time care to ensure his safety.

**ANSWER:** Defendants admit that Mr. Talevski has suffered from dementia, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 8 of Plaintiff's Complaint.

9. In January 2016, when Mr. Talevski's family could no longer care for him, he became a patient at VCR, a nursing facility located in his hometown Valparaiso, Indiana. At the

time that he entered VCR, Mr. Talevski was able to able to walk, talk, feed himself, socialize, and recognize his family.

**ANSWER:** Defendants admit that Mr. Talevski became a patient at VCR in January 2016, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 9 of Plaintiff's Complaint.

10. While Mr. Talevski was a resident at VCR, his wife and two daughters were frequently called to the facility to help staff with Mr. Talevski. Mrs. Talevski and her daughters observed that VCR's dementia unit was often understaffed. Additionally, the staff that was present appeared to be poorly trained in dealing with dementia patients. On a number of occasions, Mr. Talevski's family found that he had soiled himself, and had a severe rash on his buttocks.

**ANSWER:** Defendants deny Plaintiff's allegations that "VCR's dementia unit was "often understaffed" or that "the staff present appeared to be poorly trained in dealing with dementia patients." Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10 of Plaintiff's Complaint and thus deny same.

11. As Mr. Talevski's time at VCR passed, he began losing his ability to communicate in English. Instead, he could communicate only in his native Macedonian. VCR never provided or used any language translation services or other means to communicate with Mr. Talevski. Consequently VCR staff had great difficulty caring for Mr. Talevski.

**ANSWER:** Defendants deny Plaintiff's allegation that "VCR never provided or used any language translation services or other means to communicate with Mr. Talevski." Defendants further deny any implication in paragraph 11 of Plaintiff's Complaint that the sole

reason Mr. Talevski was difficult to care for was his communication skills. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 11 of Plaintiff's Complaint and thus deny same.

12. In late August 2016, Mr. Talevski suddenly and dramatically decompensated. He stopped eating on his own, requiring his wife and daughters to go to VCR to feed him. One [sic] one occasion, Mr. Talevski could not even get up out of bed at all.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 of Plaintiff's Complaint.

13. When Mr. Talevski's [sic] confronted VCR staff about why Mr. Talevski's condition was deteriorating so drastically, they were told that it was the progression of his disease.

**ANSWER:** Defendants deny the allegations contained in paragraph 13 of Plaintiff's Complaint.

14. On or about September 2016, Mr. Talevski's daughter asked VCR staff for a list of all the medications that Mr. Talevski was being given. The list revealed that Mr. Talevski was on ten different medications, six of which were psychotropic medications.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of Plaintiff's Complaint.

15. Mr. Talevski's daughter strongly suspected that her father was being chemically restrained, a suspicion she confirmed with outside medical providers, and Mr. Talevski's family sought outside medical care from a specialist to remove these medications from her father's regime.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of Plaintiff's Complaint.

16. During the week of September 27, 2016, the Indiana State Department of Health ("ISDH") conducted its annual survey of VCR. During that time, survey nurses were available for residents or family members to speak with. Mr. Talevski's family filed a formal compliant with ISDH regarding the over-prescribing of psychiatric drugs to chemically restrain Mr. Talevski.

**ANSWER:** Defendants admit that ISDH conducted an annual survey of VCR during the week of September 27, 2016, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16 of Plaintiff's Complaint.

17. As Mr. Talevski's medication was tapered down, per the orders of his own neurologist, Mr. Talevski began to recover, and started to feed himself once again.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 of Plaintiff's Complaint.

18. In late November, VCR started to send Mr. Talevski out to Doctors NeuroPsychiatric Hospital ("NeuroPsych") in Bremen, Indiana, which is an hour and half away from Valparaiso. VCR's reason for this action was alleged inappropriate behavior towards female residents and staff.

**ANSWER:** Defendants admit that, per physician order, Mr. Talevski was admitted to Doctors NeuroPsychiatric Hospital ("NeuroPsych") in Bremen, Indiana in late November 2016, but deny all other allegations contained within paragraph 18 of Plaintiff's Complaint.

19. Initially, Mr. Talevski was sent to NeuroPsych from November 23 through December 15, 2016. Only four days after his return from NeuroPsych, Mr. Talevski was sent to this facility for a second time, from December 19 through December 29. The *day after his return* Talevski was sent to NeuroPsych for a third time.

**ANSWER:** Defendants admit that, per physician orders, Mr. Talevski was admitted to NeuroPsych from approximately November 23 through December 15, 2016, from approximately December 20 through December 29 and on or about December 30, 2016. Defendants deny any remaining allegations contained in paragraph 19 of Plaintiff's Complaint that are inconsistent with these admissions.

20. NeuroPsych intended to return Mr. Talevski to VCR on January 9, 2017. However, VCR refused to accept Mr. Talevski back. Instead, VCR tried to force his transfer to an all-male dementia facility in Indianapolis.

**ANSWER:** Defendants deny the allegations contained in paragraph 20 of Plaintiff's Complaint.

21. The last time Mr. Talevski was sent to NeuroPsych, he was sent without his dentures. VCR never provided NeuroPsych with Mr. Talevski's dentures, leaving him, essentially, toothless in Bremen.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of Plaintiff's Complaint.

22. When VCR refused to allow Mr. Talevski to return, his family filed a Petition for Review of Involuntary Transfer through ISDH.

**ANSWER:** Defendants deny that it refused to allow Mr. Talevski to return to VCR. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22 of Plaintiff's Complaint.

23. Although the staff at NeuroPsych attempted to find another facility for Mr. Talevski, they were unable to find another appropriate facility in Northwest Indiana. NeuroPsych was able to find a suitable facility in Bremen, although that facility was a ninety-minute drive from Mr. Talevski's family in Valparaiso.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of Plaintiff's Complaint.

24. The family agreed to Mr. Talevski's temporary transfer there pending the outcome of the ISDH hearing.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of Plaintiff's Complaint.

25. Because Mr. Talevski had not had his dentures at NeuroPsych, when he was transferred to Bremen, the staff there was unable to fit new dentures because his gums had receded to far. As of the date of filing, Mr. Talevski is still without his dentures.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of Plaintiff's Complaint.

26. On January 19, 2017, an ISDH Administrative Law Judge ("ALJ") held a nearly six-hour-long hearing following which the ALJ effectively denied VCR's attempt to "patient dump" Mr. Talevski, ruling "the decision to transfer [Mr. Talevski] from Valparaiso Care and Rehabilitation should **NOT** be affirmed." The order was issued February 28, 2017.

**ANSWER:** Defendants admit on February 3, 2017, Scott Wallace, an appointed ALJ, issued his "*Findings of Fact, Conclusions of Law, and Recommended Order*." Defendants admit the *Findings of Fact. Conclusions of Law, and Recommended Order* speaks for itself. Defendants deny the *Findings of Fact. Conclusions of Law, and Recommended Order* was issued on February 28, 2017. Defendants further deny any allegation or inference contained in paragraph 26 of Plaintiff's Complaint that Defendants attempted to "patient dump" or that the *Findings of Fact. Conclusions of Law, and Recommended Order* contains any such findings. Defendants deny all remaining allegations of paragraph 26 of Plaintiffs' Complaint.

27. Based on the ALJ's order, the family attempted to have Mr. Talevski returned to VCR. However, VCR simply ignored the order and refused to readmit Mr. Talevski.

**ANSWER:** Defendants deny the allegations of paragraph 27 of Plaintiff's Complaint.

28. As a result, Mr. Talevski unnecessarily spent more than a month and a half at NeuroPsych, at a cost of nearly $30,000, all of which was paid for by Medicare.

**ANSWER:** Defendants deny the allegations of paragraph 28 of Plaintiff's Complaint.

29. Mr. Talevski's family complained to the ISDH regarding VCR's refusal to abide by the ALJ's order. The ISDH sent in another nurse investigator to address all the complaints against the nursing home.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 of Plaintiff's Complaint.

30. In May 2017, the ISDH issued their finding in an 81 page document.

**ANSWER:** Defendants admit in May 2017, an ISDH nurse surveyor issued a report related to a survey conducted at VCR in March 2017. ("Survey Report"). Defendants admit that

Survey Report speaks for itself. Defendants deny the allegations of paragraph 30 of Plaintiff's Complaint to the extent they are inconsistent with these admissions.

31. After "dumping" Mr. Talevski at NeuroPsych in January, following the May ISDH report, ASC contacted Mrs. Talevski to discuss evaluating Mr. Talevski for return to VCR.

**ANSWER:** Defendants deny the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32. After meeting with VCR staff in June 2017, and after reading the 81 page report, Mr. Talevski's family was very concerned about possible retribution against Mr. Talevski if he was to be returned. Additionally, Mr. Talevski was by now acclimated to his new surrounding at the Bremen nursing home.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of Plaintiff's Complaint.

33. As a result, Mr. Talevski's family opted to leave Mr. Talevski in the Breman [sic] facility.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of Plaintiff's Complaint.

34. As a result, Mr. Talevsji's [sic] family is required to make a three-hour round-trip to visit Mr. Talevski, which they do on a regular basis.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 of Plaintiff's Complaint.

### III. Legal Allegations

**Count One: Deprivation of Rights Under Color of State Law (42 U.S.C. § 1983)**

35. Plaintiff restates each and every allegation in paragraphs one (1) through thirty-four (34) as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 34 of Plaintiff's Complaint as though fully restated herein.

36. Defendant HHC is a corporation owned by Marion County, Indiana, and is therefore "person … under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

**ANSWER:** The allegations contained in Paragraph 36 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent the Court requires Defendants to respond, Defendants deny the allegations contained in paragraph 36 of Plaintiff's Complaint.

37. Defendant VCR is wholly-owned by HHC and is therefore a "person … under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

**ANSWER:** The allegations contained in Paragraph 37 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent the Court requires Defendants to respond, Defendants deny the allegations contained in paragraph 37 of Plaintiff's Complaint.

38. Defendant ASC manages VCR as an agent of HHC, and is therefore "person … under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

**ANSWER:** The allegations contained in Paragraph 38 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent the Court requires Defendants to respond, Defendants deny the allegations contained in paragraph 38 of Plaintiff's Complaint.

39. The 1987 Omnibus Budget Reconciliation Act ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), which was contained within the 1987 OBRA, and the implementing regulations therefore, found at 42 C.F.R. § 483, *et seq.*, clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

**ANSWER:** The allegations contained in Paragraph 39 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent the Court requires Defendants to respond, Defendants deny the allegations contained in paragraph 39 of Plaintiff's Complaint.

40. The Defendants' actions, individually and/or collectively, and in derogation of the above statute and regulations, have deprived Mr. Talevski of those rights by:

   a. maintaining a policy, practice or custom of allowing the use illegal chemical restraints on Mr. Talevski and other VCR patients;

   b. maintaining a policy, practice or custom that denied Mr. Talevski, via his legal representatives, to file grievance free of reprisal as required by law;

   c. maintaining a policy, practice or custom that deprived Mr. Talevski and other VCR residents, to remain at the nursing facility and not to be transferred or discharged without due process;

   d. denying Mr. Talevski due process by failing to provide proper and timely notification of any transfer or discharge from the nursing facility;

   e. by maintaining a policy, practice, or custom, that failed to care for Mr. Talevski in such a manner and in such an environment as to promote maintenance or enhancement of the quality of life of each resident;

 f.  by maintaining a policy, practice, or custom that failed to provide Mr. Talevsi [sic] with nursing and related services and specialized rehabilitative services to attain or maintain his highest practicable physical, mental, and psychological well-being; that is, by repeatedly and regularly failing to have sufficient staff to care for Mr. Talevski;

 g.  failing to provide Mr. Talevski with medically-related social services, including but not limited to translating services, to attain or maintain his highest practicable physical, mental, and psychological well-being; that is, by failing to provide effective means to communicate with Mr. Talevski in his native language;

 h.  failing to provide Mr. Talevski with pharmaceutical services (including procedures that assure the accurate acquiring, receiving, dispensing, and administering of all drugs and biologicals) to meet his needs; that is, by over-prescribing the use of psychotropic drugs as chemical restraints;

 i.  failing to provide Mr. Talevski with an on-going program, directed by a qualified professional, of activities designed to meet his interests and the physical, mental, and psychological well-being;

 j.  by failing to provide Mr. Talevski with routine dental services (to the extent covered under the State plan) and emergency dental services to meet his needs; that is, by failing to provide him with his dentures when transferring him to NeuroPsych;

 k.  depriving Mr. Talevski of his right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat his medical symptoms; that is, by over-prescribing the use of psychotropic drugs to chemically restrain Mr. Talevski;

**ANSWER:** Defendants deny the allegations contained in paragraph 40, including subparts, of Plaintiff's Complaint.

 41. The Defendants' actions were intentional, willful, and in reckless disregard for Mr. Talevski's rights.

**ANSWER:** Defendants deny the allegations contained in paragraph 41 of Plaintiff's Complaint.

42. As a result of the Defendants' unlawful actions, Mr. Talevski suffered, and continues to suffer, damages, including but not limited to, legal expenses, physical and mental pain and suffering, emotional distress, humiliation, and embarrassment.

**ANSWER:** Defendants deny the allegations contained in paragraph 42 of Plaintiff's Complaint.

Any allegation contained in Plaintiffs' Complaint that has not been specifically and expressly admitted is hereby denied by Defendants.

WHEREFORE Defendants, The Health and Hospital Corporation of Marion County, American Senior Communities, LLC, and Valparaiso Care and Rehabilitation, pray that Plaintiff take nothing by way of his Complaint in this action, for costs herein, and for all other just and proper relief under the premises.

## **AFFIRMATIVE AND ADDITIONAL DEFENSES**

Defendants have undertaken in good faith to list all of the additional or affirmative defenses that they may have with respect to causes of action or claims presented in Plaintiff's Complaint. Defendants specifically reserve the right, however, to amend, supplement, restate and/or withdraw any of their additional or affirmative defenses or to assert additional defenses based upon: (i) Plaintiff's failure to sufficiently particularize his causes of action or claims; and (ii) Defendants' continuing analysis and investigation of the underlying matters, as well as the allegations stated in Plaintiff's Complaint. Furthermore, by characterizing the following as defenses, Defendants do not admit they bear the burden of proof on any of the issues raised by the following defenses.

Subject to and without waiving any of the foregoing, Defendants identify the following additional and/or affirmative defenses upon which they may rely:

1. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

2. Plaintiff's claims are barred, in whole or in part, because Defendant American Senior Communities, LLC is not a state actor capable of acting under color of state law.

3. Plaintiff's claims are barred, in whole or in part, because the Federal Nursing Home Reform Act (FNHRA) does not create a private right of action under 42 U.S.C. § 1983.

4. Plaintiff failed to state a claim against Defendants upon which relief may be granted.

5. Plaintiff failed to mitigate damages or losses allegedly sustained.

6. Plaintiff assumed and/or incurred the risk of injuries and damages.

7. Plaintiff's claims are barred, in whole or in part, because Defendants' conduct was at all relevant times reasonable, in good faith, with the reasonable and ordinary care expected in the nursing home health care industry.

8. Loss or damage about which Plaintiffs complain was proximately caused by independent and/or intervening causes, and not the alleged conduct on the part of Defendants.

9. Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

10. Defendants are immune from liability.

11. Plaintiff's claims are barred by the Parratt–Hudson Doctrine.

12. Punitive damages are not recoverable against municipal corporations.

13. Plaintiff's claims are barred because the Court lacks subject matter jurisdiction.

14. Plaintiff's damages are limited pursuant to I.C. §34-18-14 et seq.

15. Defendants are qualified healthcare providers and are therefore entitled to all privileges, defenses, limitations and protections under Indiana's Medical Malpractice Act, which are incorporated by reference herein.

16. Plaintiff has failed to obtain an opinion of the Medical Review Panel as required by Indiana Code 34-18-10 *et. seq*.

17. Plaintiff and/or Mr. Talevski were guilty of contributory negligence.

18. To the extent the Court determines Plaintiff's claims fall outside of the Medical Malpractice Act, Plaintiff's claims are proportionately reduced and/or are barred entirely by Plaintiff and/or Mr. Talevski's own comparative fault and/or the comparative fault of non-parties, including but not limited to NeuroPsych, Mr. Talevski's medical providers who ordered his medications, and any members of Mr. Talevski's family.

19. Defendants reserve the right to add any additional defenses which may become available as Plaintiff's legal theories or additional facts are revealed by discovery.

WHEREFORE Defendants, The Health and Hospital Corporation of Marion County, American Senior Communities, LLC, and Valparaiso Care and Rehabilitation, pray that Plaintiff take nothing by way of his Complaint in this action, for costs herein, and for all other just and proper relief under the premises.

    RILEY BENNETT EGLOFF LLP

    <u>Laura K. Binford</u>
    Laura K. Binford
    Atty. No. 15280-49A
    Jaclyn M. Flint
    Atty. No. 32589-49
    Attorney for Defendants,
    The Health and Hospital Corporation of
    Marion County d/b/a Valparaiso Care
    and Rehabilitation and American Senior
    Communities, LLC

17

RILEY BENNETT EGLOFF LLP
500 N. Meridian Street, Suite 550
Indianapolis, IN  46204
(317) 636-8000
(317) 636-8027 (Fax)
lbinford@rbelaw.com
jflint@rbelaw.com

USDC IN/ND case 2:19-cv-00013-JTM-APR   document 31   filed 09/17/21   page 17 of 17

{02166921- }